**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JAWWAD ABDUL-HALIM,**

                                        **Plaintiff,**

        **vs.**                                        **9:19-CV-740**
                                                **(MAD/ML)**

**PETE BRUYERE; DONALD VENETOZZI,**

                                        **Defendants.**
_____

**APPEARANCES**                          **OF COUNSEL:**

**JAWWAD ABDUL-HALIM**
13-A-3499
Five Points Correctional Facility
Caller Box 119
Romulus, New York 14541
Plaintiff, *pro se*

**OFFICE OF THE NEW YORK**              **HELENA O. PEDERSON, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I.   INTRODUCTION

        Plaintiff *pro se* Jawwad Abdul-Halim (hereinafter "Plaintiff"), an inmate currently in the

custody of the New York State Department of Corrections and Community Supervision

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that Defendants Donald

Venettozzi and Pete Bruyere (hereinafter "Defendants"), violated his due process rights under the

Fourteenth Amendment.  *See generally* Dkt. No. 1.  On November 23, 2020, Defendants filed a

motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which

Plaintiff has opposed.  Dkt. Nos. 43, 47.  In a May 10, 2021, Report–Recommendation and Order, Magistrate Judge Lovric recommended that the Court grant in part Defendants' motion for summary judgment as to (1) Plaintiff's claims for monetary damages against Defendants acting in their official capacities, and (2) Plaintiff's due process claim against Defendant Venettozzi.  *See* Dkt. No. 58.  Magistrate Judge Lovric further recommended that Defendants' motion be denied in part, as to (1) Plaintiff's due process claim against Defendant Bruyere, and (2) the issue of qualified immunity.  *See id.*

On May 24, 2021, Defendants filed objections to Magistrate Judge Lovric's Report–Recommendation and Order.  *See* Dkt. No. 59.  Specifically, Defendants objected to the portion which recommended denial of summary judgment on Plaintiff's due process claim against Defendant Bruyere for the following six reasons: (1) the existence or non-existence of the mail watch authorization form is immaterial to the determination of whether or not Plaintiff's due process rights were violated; (2) the Court ought to grant *in camera* review of the confidential information previously relied upon by Defendant Bruyere during Plaintiff's disciplinary hearing; (3) Plaintiff was given adequate opportunity to review evidence and call witnesses as to satisfy due process; (4) Defendant Bruyere adequately examined the credibility of the confidential informant; (5) the undisputed facts show that Defendant Bruyere finding Plaintiff guilty of all charges was based upon the requisite standard of "some evidence;" and (6) Defendant Bruyere is entitled to qualified immunity.  *See* Dkt. No. 59 at 1-6.

## II. BACKGROUND

The Court assumes the parties' familiarity with the relevant factual background in this matter and, to the extent consistent with the record, adopts the factual recitation contained in

Magistrate Judge Lovric's May 10, 2021, Report-Recommendation and Order.  *See* Dkt. No. 58 2-7.

## III. DISCUSSION

**A.    Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp*., 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Id.* at 36-37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted).  Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted).  The Second Circuit has instructed that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education.  *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  "However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment.  *See id.* at 295 (citing *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484, *1 (S.D.N.Y. May 16, 2001)).  Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error.  *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted).  After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

**B.      Eleventh Amendment**

4

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI; *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the type of claims asserted in Plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977). Actions for damages against a state official in his or her official capacity are essentially actions against the state. *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).

As Magistrate Judge Lovric noted, in response to Defendants' motion, Plaintiff withdrew his claims against Defendants in their official capacity. *See* Dkt. No. 58 at 13. Therefore, the Court grants Defendants' motion for summary judgment insofar as it dismisses all claims against Defendants in their official capacities.

**C.     Personal Involvement of Defendant Venettozzi**

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under Section 1983. *See Ashcroft v. Iqbal*, 556 U.S.

662 (2009) ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic").  Recently, the Second Circuit held that a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). To prevail on a Section 1983 cause of action against an individual, Plaintiff must establish that Defendant Venettozzi through his own actions, was personally involved in the alleged due process violation.

Plaintiff asserts that Defendant Venettozzi was personally involved in the alleged constitutional violation because he was the "sole decision maker" of the administrative appeal process and denied Plaintiff's requests for reconsideration, but Plaintiff admits that Defendant Venettozzi was not involved in the disciplinary hearing itself.  Dkt. No. 47-1 at 4-5.  It is well settled that affirming the outcome of a disciplinary hearing does not in itself constitute personal involvement in any potential due process violation.  *See Brown v. Annucci*, No. 19-CV-9048, 2021 WL 860189, *9 (S.D.N.Y. Mar. 8, 2021) (dismissing due process claims against Venettozzi because "plaintiff alleges only that Venettozzi denied plaintiff's appeal of [the hearing officer]'s disciplinary determination"); *see also Smart v. Annucci*, No. 19-CV-7908, 2021 WL 260105, *5 (S.D.N.Y. Jan. 26, 2021) (noting that "even before *Tangreti*, affirming the outcome of a prison hearing was not sufficient to establish personal involvement").  Accordingly, Defendant Venettozzi's decisions related to Plaintiff's appeal do not amount to the requisite personal involvement in the alleged due process violation.  Therefore, summary judgment is granted in favor of Defendant Venettozzi.

**D.     Request for *In Camera* Review**

In support of the motion for summary judgment, Defendants rely upon the following evidence: (1) the confidential portion of the hearing transcript; (2) OSI Case No. NIU/17/10170 (the relevant case file); and (3) the unredacted April 2018 Venettozzi Memorandum.  These documents were not uploaded on the Court's Docket through CM/ECF and were not served upon Plaintiff.  Defendants offer to provide the Court with a copy of the confidential transcript and OSI investigation, *in camera*, "upon request."  Dkt. No. 55-1 at 4, n.2; Dkt. No. 55-3 at 3, n.3; Dkt. No. 55-3 at 4, n.4.

As Magistrate Judge Lovric properly determined, *in camera* review is generally not appropriate at the summary judgment stage in the absence of special circumstances.  *See Hansberry v. Father Flanagan's Boys' Home*, No. 03-cv-3006, 2004 WL 3152393, *4, n.9 (E.D.N.Y. Nov. 28, 2004) (citations omitted); *see also Kinoy v. Mitchell*, 67 F.R.D. 1, 15 (S.D.N.Y. 1975) (finding that *in camera* exhibits submitted by the government in connection with the government's motion for summary judgment in a civil case may not be considered except to determine privilege).  In similar cases involving *pro se* inmates, courts in this district have generally declined to consider *in camera* evidence on a motion for summary judgment.  *See Benitez v. Locastro*, No. 9:04-CV-423, Dkt. No. 129, Order (N.D.N.Y. May 8, 2009); *Smith v. Greene*, No. 9:06-CV-505, 2009 WL 10722414, *2 (N.D.N.Y. June 8, 2009); *Gibson v. Rosati*, No. 9:13-CV-0503, 2016 WL 11478234, *2 (N.D.N.Y. May 19, 2016), *report and recommendation adopted*, 2016 WL 5390344 (N.D.N.Y. Sept. 27, 2016).

In their objections, Defendants fail to identify any special circumstances or other distinguishing circumstance present here that would justify an appropriate use of *in camera* review.  *See* Dkt. No. 59 at 2-3.  Accordingly, the Court declines to consider the evidence offered *in camera*.

**E.      Fourteenth Amendment Due Process Claims Against Defendant Bruyere**

The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall ...

deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend.

XIV, § 1.  It is important to emphasize that due process "does not protect against all deprivations

of liberty.  It protects only against deprivations of liberty accomplished without due process of the

law."  *Baker v. McCollan*, 443 U.S. 137, 145 (1979) (internal quotation and citations omitted).

"A liberty interest may arise from the Constitution itself, ... or it may arise from an expectation or

interest created by state laws or policies."  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)

(citations omitted).  An inmate retains a protected liberty interest in remaining free from

segregated confinement if the prisoner can satisfy the standard set forth in *Sandin v. Conner*, 515

U.S. 472, 483-84 (1995).

"To formulate a claim under the Due Process Clause of the Fourteenth Amendment, a

plaintiff must demonstrate that he or she possesses a constitutionally protected interest in life,

liberty, or property, and that state action has deprived him or her of that interest."  *Valmonte v.*

*Bane*, 18 F.3d 992, 998 (2d Cir. 1994) (citation omitted).  "The Supreme Court has established

that '[w]e examine procedural due process questions in two steps: the first asks whether there

exists a liberty or property interest which has been interfered with by the State; the second

examines whether the procedures attendant upon that deprivation were constitutionally

sufficient.'"  *Id.* (quoting *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.

Ct. 1904, 1908, 104 L. Ed. 2d 506 (1989)).

The due process protections afforded a prison inmate do not equate to "the full panoply of

rights' due to a defendant in a criminal prosecution."  *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir.

2004) (quotation omitted).  "Nevertheless, an inmate is entitled to advance written notice of the

charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 556, 563-67 (1974)).

"Since *Wolff*, the Supreme Court has clarified that judicial review of the written findings required by due process is limited to determining whether the disposition is supported by 'some evidence.'" *Id.* (quoting *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985)). "This standard is extremely tolerant and is satisfied if 'there is any evidence in the record that supports' the disciplinary ruling." *Id.* (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)). Nevertheless, as the Second Circuit has explained, "the 'some evidence' standard requires some 'reliable evidence.'" *Id.* (quotation and other citation omitted).

The "some evidence" standard, detailed in *Superintendent v. Hill*, 472 U.S. 445 (1985), is satisfied if "'there is any evidence in the record that supports' the disciplinary ruling." *Sira*, 380 F.3d at 69 (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)). "[P]rison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." *Hill*, 472 U.S. at 456 (requiring only a "modicum of evidence" to support a hearing decision).

Plaintiff asserts that his due process rights were infringed upon in the following ways: (1) He did not receive adequate notice of the charges against him, (2) he did not receive adequate assistance, (3) Bruyere was not fair and impartial, (4) he was not allowed the opportunity to present evidence in his defense, and (5) Bruyere's decision was not supported by some evidence. *See* Dkt. No. 47-1 at 7-11.

### 1. Written Notice

Magistrate Judge Lovric properly determined, and Plaintiff has not objected to the finding, that Plaintiff received adequate notice of the charges against him.  An inmate must be provided advance written notice of the charges against him at least twenty-four hours before the disciplinary hearing commences.  *Wolff*, 418 U.S. at 563–64.  Notice must be written "in order to inform [the inmate] of the charges and to enable him to marshal the facts and prepare a defense." *Id.* at 564.  Plaintiff received a Misbehavior Report with notice of his formal charges and all other pertinent information on May 30, 2017, well in advance of his Tier III disciplinary hearing which took place on June 16, 2017.  *See* Dkt. No. 43-5 at 16, 76.  The hearing transcript record shows that Plaintiff was able to understand the charges and present his objections.

### 2. Hearing Assistant

"Although inmates are not entitled to retained or appointed counsel in prison disciplinary hearings, '[p]rison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges.'" *Moore v. Peters*, 92 F. Supp. 3d 109, 125-26 (W.D.N.Y. 2015) (quoting *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1988)).  "New York's regulations entitle a prisoner to an employee assistant to help him prepare for a disciplinary hearing."  *Id.* at 126 (citing 7 N.Y.C.R.R. §§ 251-4.1, 251-4.2).  "The assistant 'need only perform what the plaintiff would have done but need not go beyond the inmate's instructions.'"  *Id.* (quotation and other citation omitted).  "[A]ny violations of this qualified right are reviewed for 'harmless error.'"  *Clyde v. Schoellkopf*, 714 F. Supp. 2d 432, 437 (W.D.N.Y. 2010) (quoting *Pilgrim v. Luther*, 571 F.3d 201, 206 (2d Cir. 2009)).

Again, Magistrate Judge Lovric properly found, and Plaintiff did not object to the determination, that Plaintiff received adequate assistance from his hearing assistant.  In the

present case, Plaintiff received an assistant, "Foster," who relayed Plaintiff's requests to the hearing officer and executed an assistance form with him.  Dkt. No. 43-5 at 64-65.  Nothing in the record supports the notion that Foster, by allegedly failing to provide Plaintiff with "several articles," such as a copy of confidential investigation protocols or a "chain of custody" document impacted the outcome of the hearing.  *See* Dkt. No. 55-1 at 79-80; *Clyde*, 714 F. Supp. 2d at 437 (quoting *Pilgrim*, 571 F.3d at 206); *see*, *e.g.*, *Young v. Polizzi*, No. 16-CV-0660, 2018 WL 3949967, *8 (N.D.N.Y. July 11, 2018); *Hernandez v. Selsky*, 572 F. Supp. 2d 446, 455 (S.D.N.Y. 2008) (concluding that because the plaintiff failed to show how the outcome of hearing would have been impacted, alleged inadequate assistance was harmless error not warranting denial of summary judgment).

### 3. Impartial Hearing Officer

"An inmate subject to a disciplinary hearing is entitled to an impartial hearing officer." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (citing cases).  Nevertheless, "[i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts," and "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges generally."  *Id.* at 259 (citing cases).  In addition to the greater flexibility accorded prison disciplinary hearing officers, the due process impartiality standard is satisfied if "some evidence" in the record supports the decision of the prison disciplinary proceeding.  *Hill*, 472 U.S. at 447.  Further, the inmate must demonstrate prejudice in connection with the alleged denial of due process by showing that it affected the outcome of the hearing.  *See Clark v. Dannheim*, 590 F. Supp. 2d 426, 429 (W.D.N.Y. 2008) (citing *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991)) (other citations omitted).

Plaintiff alleges that Defendant Bruyere was not an impartial hearing officer and that he was "bias[ed] and harsh."  Dkt. No. 43-4 at 49.  Although Bruyere's determination was later modified, the evidence in the record, including the hearing transcript shows that Plaintiff received an explanation of his rights and was given an opportunity to respond to the allegations.  *See* Dkt. No. 55-1 at 76-77.  As such, the Court finds that Magistrate Judge Lovric correctly concluded that Plaintiff's assertions with respect to Defendant Bruyere's alleged bias are unsupported by the record as a whole and are insufficient to give rise to a dispute of material fact.  *See Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir. 1989) ("[A] plaintiff-inmate armed with nothing more than conclusory allegations of bias and prejudgment should not be able to defeat a well-supported motion for summary judgment"); *Boose v. Schneider*, No. 14-CV-0518, 2016 WL 8732644 (N.D.N.Y. Feb. 19, 2016).

### 4. Failure to Provide Evidence

An accused prisoner has the right to a hearing where he is given the reasonable opportunity to call witnesses and present documentary evidence.  *Sira*, 380 F.3d at 69 (citing, inter alia, *Wolff*, 418 U.S. at 563–67).  In the present matter, Plaintiff claims only that he was denied the ability to present documentary evidence, when Defendant Bruyere failed to provide him mail watch authorizations upon request and refused to allow him to review the investigative material.  Dkt. No. 47-1 at 7-9.

### a. Mail Watch Authorizations

During Plaintiff's hearing, he twice requested copies of mail watch authorizations.  *See* Dkt. No. 55-1 at 82, 96.  In response, Defendant Bruyere advised that the authorizations were not available and recommended that Plaintiff "do a FOIL request" if he wished to ascertain them.  *Id.* at 96.  In July of 2017, Plaintiff submitted a FOIL request seeking "a copy of any authorization

for this incident." Dkt. No. 47-1 at 24.  He was advised that no such authorization existed.  *Id.* at

25.  On April 18, 2018, the disposition of Plaintiff's hearing was reversed on the basis that a mail

watch authorization had not existed at the time the letter was seized in violation of DOCCS

policy.  Dkt. No. 55-2 at 47.  For over three years, it was presumed by the Court and all parties

that mail watch authorizations for either Plaintiff or the other implicated party, Juan Alcantara,

had never existed.  However, on February 4, 2021, Defendants submitted amended declarations,

informing the Court that mail watch authorizations actually had existed for both Plaintiff and

Alcantara at the time the letter was seized.  *Id.*  Defendants attached the authorizations which

were dated January 17, 2017, and January 18, 2017.  *Id.* at 50-51.

Defendants now argue that the existence of the mail watch authorizations is immaterial to

whether Plaintiff's due process rights were violated.  Dkt. No. 59 at 1.  Further stating in their

objections, without providing authority, that even though the purported lack of authorizations was

the cause of the later reversal of Plaintiff's hearing disposition, this was not indicative of the

relevance of these documents to the matter at hand.  *See id.* at 2.  Yet, it is well established that

the denial of evidence at a disciplinary hearing is only considered harmless error when it would

not have affected the outcome of the hearing.  *See Payne v. Coburn*, No. 9:15-CV-00392, 2017

WL 4330372, *14 (N.D.N.Y. Aug. 29, 2017), *report and recommendation adopted*, 2017 WL

4326079 (N.D.N.Y. Sept. 27, 2017) (finding that the inclusion of a plaintiff's past grievances

would not have affected the outcome of his disciplinary hearing, and any error pertaining to the

denied documents was harmless); *Jay v. Venetozzi*, No. 15-CV-147S, 2020 WL 4382001, *7

(W.D.N.Y. July 30, 2020) (citation omitted) (holding that if an officer excludes evidence, "it is

harmless error if the documents would not have led to a different result").  Here, the record clearly

establishes that the existence of the mail watch authorizations was crucial to the outcome of

Plaintiff's hearing.

As Magistrate Judge Lovric properly determined, the prolonged procedural and

evidentiary history of the mail watch authorizations in this matter make it clear that there remain

issues of fact relating to their materiality.  To conclude otherwise would encourage interested

parties who fail to disclose pertinent information or disclose inaccurate information and fail to

remedy.  *See* Dkt. No. 58 at 26.

### b. Investigative Material

The Second Circuit has held that "at a minimum, a prisoner is entitled to be 'confronted

with the accusation, informed of the evidence against him ... and afforded a reasonable

opportunity to explain his actions.'"  *Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir. 1989) (quoting

*Sostre v. McGinnis*, 442 F.2d 178, 198 (2d Cir. 1971)).  "Although that right can give way to

legitimate concerns over institutional safety, an inmate is still entitled to some explanation of the

basis for a hearing officer's denial of the inmate's request for certain witnesses or items of

evidence."  *Loret v. Selsky*, 595 F. Supp. 2d 231, 234 (W.D.N.Y. 2009).  However, "simply

invoking security concerns, with no articulation at all of how institutional security could be

jeopardized or compromised by turning over the evidence in question, does not meet that

minimum constitutional standard."  *Id.*

Here, Plaintiff was never provided with the confidential materials relied upon by

Defendant Bruyere and the hearing was adjourned so that Defendant Bruyere could take

confidential testimony from Investigator Woodworth outside of Plaintiff's presence.  Plaintiff

requested a copy of the informant statement, even if redacted, twice during the hearing and was

denied without an explanation.  *See* Dkt. No. 55-1 at 83, 97.  In his declaration, Defendant

Bruyere cites "safety and security" concerns and DOCCS Directive 4932 to support his decision to take testimony outside of Plaintiff's presence and to deny Plaintiff the ability to read even a redacted version of the confidential materials. *See id.* at 6. However, as noted by Magistrate Judge Lovric, the hearing transcript is devoid of any reference by Defendant Bruyere to either specific security concerns or DOCCS directives to justify his actions regarding the confidential materials and testimony. In their objections, Defendants merely restate that "institutional safety and security concerns" existed relating to disclosure of the investigative materials but do not contend that Defendant Bruyere ever offered such an explanation to Plaintiff. *See* Dkt. No. 59 at 4. Without the confidential report itself, the Court cannot conclude as a matter of law that Plaintiff's right to be informed of the evidence against him was not violated.

### 5. *"Some Evidence" Supporting the Disposition*

As previously stated, a prison disciplinary decision must be "supported by some evidence in the record." *Hill*, 472 U.S. at 454. The Second Circuit has clarified the inquiry as whether there was any "reliable evidence" supporting the hearing's outcome. *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004); *see also Sira v. Morton*, 380 F.3d 57, 76-77 (2d Cir. 2004). When the evidence at issue comes from a confidential informant, the Second Circuit has held that this "some reliable evidence" standard requires a prison hearing officer to "independently assess the credibility of the informant[ ], considering the totality of the circumstances." *Sowell v. Weed*, No. 07-cv-6355, 2013 WL 3324049, *11 (W.D.N.Y. July 1, 2013) (citing *Sira*, 380 F.3d at 78) (other citation omitted). However, "the hearing officer is not required to personally interview or question the confidential informant and[ ] may rely solely on the informants' hearsay statements." *Sowell*, 2013 WL 3324049, at *12 (emphasis omitted). Even a disciplinary conviction based solely on evidence supplied by a confidential informant may satisfy this standard "as long as there

has been some examination of indicia relevant to [the confidential informant's] credibility."  *Id.* at

*11 (quoting *Giakoumelos v. Coughlin*, 88 F.3d 56, 61 (2d Cir. 1996)).  Factors to consider in

determining credibility include the "'identity and reputation of the original declarant, his motive

for making the statements at issue, whether he is willing to testify and, if not the reasons

informing that decision, and the consequences he faces if his disclosures are proven false.'"

*Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 611 (S.D.N.Y. 2009) (quotation and other citation

omitted).

 Here, Defendant Bruyere relied almost exclusively on the testimony of Investigator

Woodworth regarding his investigation and his assessment of the credibility of the confidential

informant.  *See* Dkt. No. 55-1 at 61.  He also reviewed the confidential report and confidential

informant statement and ultimately found the informant to be credible.  *Id.* at 8, 98.  While

Defendants appear to argue in their objections that Investigator Woodworth had first-hand

knowledge of the circumstances surrounding the incident, because it was he who conducted the

subsequent investigation and authored the misbehavior report, it is undisputed by the record that

Investigator Woodworth did not witness or have any involvement in the incident prior to the letter

coming into the possession of the OSI Narcotics Unit.  *See* Dkt. No. 59 at 5-6; Dkt. No. 55-3 at 2.

As such, Magistrate Judge Lovric properly determined that Investigator Woodworth's testimony

was based upon hearsay, and Defendant Bruyere was thereby required to conduct "a greater

inquiry into the reliability of this hearsay information."  *Dawkins*, 646 F. Supp. 2d at 611.

 As the confidential portion of the hearing is not in the record before the Court, the extent

of Defendant Bruyere's inquiry into the reliability of the confidential informant is limited to two

questions.  *See* Dkt. No. 58 at 32.  As noted by Magistrate Judge Lovric, Defendant Bruyere did

not inquire about how the confidential informant came forward, whether Investigator Woodworth

had prior dealings with the informant, whether the informant had first-hand knowledge of the letter or Plaintiff's conduct, or if he had any sort of prior relationship to Plaintiff. Without a more extensive inquiry into the reliability of the confidential informant through Investigator Woodworth's testimony, the Court cannot conclude as a matter of law that Defendant Bruyere sufficiently assessed the informant's credibility. *See Dawkins*, 646 F.Supp.2d at 610-11; *cf. McDonald v. Zerniak*, No. 9:15-CV-141, 2016 WL 6581289, *6 (N.D.N.Y. Nov. 4, 2016) (reasoning that the hearing officer made sufficient "basic inquiries" regarding the reliability and credibility of the informant with inquiries regarding the sergeant's prior dealings with the informant, the informant's "prior dealings" with the plaintiff, and tools utilized to secure the informant's positive identification).

Defendants state in their objections that, in addition to relying on the confidential informant in his decision, Defendant Bruyere also determined that Mr. Alcantara's conflicting testimony was not credible. *See* Dkt. No. 59 at 5. This determination is not referenced in the hearing disposition sheet. *See* Dkt. No. 55-1 at 61. However, even assuming that Alcantara's lack of credibility could be considered "some evidence" to support his decision, Plaintiff's claims regarding Alcantara also being the confidential informant prevent the Court from determining whether this evidence is "reliable."

As noted by Magistrate Judge Lovric, Plaintiff has claimed as early as his initial complaint that Alcantara is also the confidential informant. *See* Dkt. No. 1 at 6-7. This claim has never been disputed by Defendants and was not disputed in their objections. Plaintiff claims that Defendant Bruyere was "well aware" Alcantara was the confidential informant at the time of the hearing and still failed to pose any questions to him during his testimony. Dkt. No. 47-1 at 10-11. Additionally, Plaintiff argues that because Alcantara was the informant, Defendant Bruyere

simultaneously found that Alcantara was credible as the informant and was not credible in his public testimony.  *Id.*  As Magistrate Judge Lovric properly determined, this lack of clarity surrounding the reliability of the informant requires the Court to find that there are genuine issues of fact regarding whether there is "some evidence" supporting Defendant Bruyere's decision.

Based upon the totality of circumstances, there are material issues of fact as to whether Defendant Bruyere's actions and the disciplinary hearing comported with the constitutional due process protections that must be afforded to an inmate's disciplinary proceedings.  It is thereby ordered that Defendants' motion for summary judgment as to Plaintiff's due process claim against Defendant Bruyere is denied.

**F.    Qualified Immunity**

Qualified immunity protects government officials from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (holding that qualified immunity is not merely immunity from damages but also "immunity from suit").  "[T]he salient question [in determining qualified immunity] is whether the state of the law ... gave [the defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional."  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  As qualified immunity is an affirmative defense, the burden of pleading it falls on the defendants.  *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citations omitted); *see also Varrone v. Bilotti*, 123 F.3d 75, 78 (2d Cir. 1997) (holding that the "defendants bear the burden of showing that the challenged act was objectively reasonable") (citation omitted).

The qualified immunity determination consists of two steps, which a court may consider in either order.  *See Seri v. Bochicchio*, 374 Fed. Appx. 114, 116 (2d Cir. 2010) (citation omitted).

The first step is to determine "whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations omitted). The second is a determination of "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (citation omitted).

A right is "clearly established" if "[t]he contours of the right ... [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "To determine whether a right is clearly established, we look to: (1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question; and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful." *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010) (citing *Schecter v. Comptroller of City of N.Y.*, 79 F.3d 265, 271 (2d Cir. 1996)). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

If there is no dispute as to any material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court. *See id.* at 368 (citation omitted). Any unresolved factual issues, however, must be resolved by the jury. *See id.* (quoting *Kerman*, 374 F.3d at 109) (other citations omitted). Once the court has received the jury's decision as to "what the facts were that the officer faced or perceived," the court must then "make the ultimate legal determination of whether qualified immunity attaches on those facts." *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) (quotation omitted); *see also Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) (quotation omitted).

As noted above, the record here indicates material issues of fact as to whether Plaintiff's Fourteenth Amendment due process rights were violated by Defendant Bruyere.  Thus, the first prong is met.

Concerning the second prong "there is a clearly-established right to procedural due process protections, including the right to have a disciplinary determination be based on some evidence of guilt.  There is also a clearly-established right to an independent assessment of confidential witnesses performed where a hearing officer relies on the witness's testimony[.]" *McAllister v. Call*, No. 9:10-cv-610, 2014 WL 5475293, *18 (N.D.N.Y. Oct. 29, 2014) (citations omitted).  In their motion for summary judgment and again in their objections, Defendants merely state, without providing support, that Defendant Bruyere reasonably believed his actions were proper.  *See* Dkt. No. 59 at 6.  Without anything further, the Court has no clear evidence that qualified immunity is applicable and therefore must deny Defendants' motion for summary judgment based upon qualified immunity.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, Magistrate Judge Lovric's Report-Recommendation and Order, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Lovric's May 10, 2021 Report-Recommendation and Order is **ADOPTED in its entirety** for the reasons stated herein; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** as to Plaintiff's claims for monetary damages against Defendants in their official capacities and Plaintiff's Fourteenth Amendment claims against Defendant Venettozzi; and the Court further

**ORDERS** that Defendants' motion (Dkt. No. 43) is **DENIED** as to Plaintiff's Fourteenth

Amendment claims against Defendant Bruyere; and the Court further

ORDERS that the Clerk of the Court shall serve a copy of this Memorandum-Decision
and Order on all parties in accordance with the Local Rules.

IT IS SO ORDERED.

Dated: August 26, 2021
        Albany, New York

Mae A. D'Agostino
U.S. District Judge